666 F.Supp. 1461 (1987)
UNITED STATES of America, et al, Plaintiff,
v.
STATE OF OREGON, et al, Defendants.
Civ. No. 68-513MA.
United States District Court, D. Oregon.
July 24, 1987.
Reconsideration Denied October 9, 1987.
*1462 Charles H. Turner, U.S. Atty., Dist. of Oregon, George D. Dysart, Sp. Asst. U.S. Atty., Portland, Or., for U.S.
Howard G. Arnett, Johnson, Marceau, Karnopp & Peterson, Bend, Or., for Warm Springs Tribe.
Timothy Weaver, Hovis, Cockrill, Weaver & Bjur, Yakima, Wash., for The Yakima Indian Nation.
Weisha Mize, Pendleton, Or., for Confederated Tribes of the Umatilla Res.
Robert C. Strom, Strom & Longeteig, Craigmont, Idaho, for Nez Perce Tribe of Idaho.
John D. Ross, III, Howard Funke, Fort Hall, Idaho, for Shoshone-Bannock Tribes.
Kenneth O. Eikenberry, Atty. Gen., Thomas F. Carr, Sr. Asst. Atty. Gen., Daniel W. Wyckoff, Asst. Atty. Gen., Fish & Game Div., Wash. State Atty. Gen.'s Office, Olympia, Wash., for State of Wash.
Dave Frohnmeyer, Atty. Gen., Cheryl Coodley, Asst. Atty. Gen., Portland, Or., and Pamela Abernathy, Asst. Atty. Gen., Salem, Or., for State of Or.
James Fell, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for State of Idaho.
Charles E. Yates, Moriarity, Mikkleborg, Broz, Wells & Fryer, Seattle, Wash., for amicus curiae Leslie Clark and Northwest Gillnetters Assoc.
Mark Bennett, Seattle, Wash., for amicus curiae Wash. State Troller Assoc.
Thane W. Tienson, Portland, Or., for amicus curiae Columbia River Fishermens Protective Union and Northwest Gillnetters Assn.

OPINION
MARSH, District Judge.
The Confederated Tribes of the Warm Springs Reservation of Oregon, the Confederated Tribes of the Umatilla Indian Reservation, the Nez Perce Tribe, the Confederated Tribes and Bands of the Yakima Indian Nation, the State of Washington, the State of Oregon and the United States (hereinafter "proponents") have moved the court for an order approving a 1987 Ocean and In-River Management Agreement for Upper Columbia River Fall Chinook and Coho Salmon. The State of Idaho objects to a portion of the proposed management agreement.
Specifically, Idaho argues that type B wild steelhead will not be properly managed under the provisions of the proposed order insofar as it applies to Zone 6. Idaho asks the court not to adopt the proposed agreement until the parties have negotiated a provision for steelhead conservation. *1463 The Shoshone-Bannock Tribe has not signed the Agreement, but makes no specific objection to its present form. A hearing on the motion and objection was held July 14, 1987.

Background
Anadromous fish are driven by migratory instincts to return to their spawning grounds through the Columbia River in precisely timed runs. Idaho ex rel. Evans v. Oregon and Washington, 462 U.S. 1017, 103 S.Ct. 2817, 77 L.Ed.2d 387 (1983), contains a discussion of anadromous fish. Some of the anadromous fish runs are mixed stock fisheries, or those of several different species of fish. At issue here is the fall run of chinook salmon and type B steelhead through Bonneville Dam and Indian fishing grounds. Both are approximately the same size, weigh between 10 and 20 pounds and both run at the same time. Virtually the entire run of type B steelhead try to return to their spawning grounds in Idaho.
Because the gillnet method of fishing is used for fall chinook, steelhead are comingled in the nets with the chinook. In 1984, 68,900 steelhead were harvested along with 50,900 chinook. In 1985, 67,600 steelhead along with 68,300 chinook. And in 1986, 61,400 steelhead along with 104,400 chinook. Idaho is specifically trying to protect the wild and natural steelhead which were spawned in natural areas in Idaho. But both chinook and steelhead are caught, as are both wild steelhead and hatchery steelhead.

History of Litigation
In 1968 the United States and individual members of the Confederated Tribes and Bands of the Yakima Indian Nation filed separate actions against the State of Oregon to define the Indians' treaty right to take fish "at all usual and accustomed places" on the Columbia River. Four Indian Tribes intervened and this court consolidated the actions.
In 1969 this court, Judge Belloni presiding, entered judgment and defined the extent to which Oregon can regulate Indian fishing. Sohappy v. Smith, 302 F.Supp. 899 (D.Or.1969). Oregon was enjoined from enforcing certain fishing regulations against the tribes. The court retained jurisdiction. Since that time extensive litigation has ensued and the parties have been encouraged to adopt a comprehensive plan concerning fisheries on the Columbia River. In the interim the State of Idaho and the Shoshone-Bannock Tribe have intervened.
In 1977 the parties signed a five year Columbia River Management Plan (hereinafter "Plan") which was adopted by this court February 28, 1977. The Plan set conservation goals for each fish species, established certain fishing regulations and provided for the establishment of future management techniques. The Plan provided for a technical advisory committee (hereinafter "TAC") comprised of representatives of each party. TAC was to develop and analyze data and make recommendations to the appropriate agencies to assure that the Plan's allocations were realized.
One of the agencies receiving TAC recommendations is the Oregon-Washington Columbia River Fish Compact (hereinafter "Compact"). This interstate agency was formed in 1918 by Oregon and Washington with the consent of Congress to ensure uniformity in the state's regulation of Columbia River anadromous fish. Idaho ex rel. Evans, 462 U.S. at 1023, 103 S.Ct. at 2822. Idaho has unsuccessfully sought entry in the Compact. Id. Under the Compact, the Columbia River is divided into six commercial fishery zones and annually the Compact estimates the size of the runs and determines the length of fishing season the runs can support.
The parties are continuing negotiation of a comprehensive plan concerning fishery on the Columbia River. Since the expiration of the five year plan the parties have entered several one year management plans. In 1985 the parties successfully moved the court to adopt a plan over Idaho's objection. United States v. Oregon, Civ. No. 68-513 Findings and Conclusions, (July 17, 1985) (J. Craig) (Appeal dismissed July 28, 1986, 9th Cir., 796 F.2d 480). A plan was drafted in 1986 but not submitted to the court for adoption. At issue now is a similar plan for 1987.

Standards of Law
Upon objection of one party in multiple party litigation, the district court must determine whether to accept an agreement among some but not all of the parties by considering whether the enforcement of the agreement would harm the protectable interests of the objecting party and weigh this against the advantages to the agreeing parties and the public interest. Local No. *1464 93, International Association of Fire-fighters v. City of Cleveland, ___ U.S. ___, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986).
Any regulation of an Indian tribe's treaty fishing rights must meet three standards. First, the state must show that the regulation is both reasonable and necessary for the conservation of the fish; the regulation must be "the least restrictive which can be imposed consistent with assuring the necessary escapement of fish for conservation purposes." Sohappy, 302 F.Supp. at 907-08. Second, the states must consider the protection of the treaty right to take fish at the Indians' usual and accustomed places as an objective co-equal with the conservation of the fish runs for other uses. Id. at 911. Third, the regulations must accord the Tribes an opportunity to take, by reasonable means, a fair and equitable share of all fish from any given run. Id. at 907-08.
Idaho's request that the proposed agreement be deferred might be likened to a request for preliminary injunctive relief. Therefore, I have considered the issues pursuant to those standards.
To obtain a preliminary injunction, plaintiff must show either (1) a likelihood of success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits and the balance of hardship tipping in its favor. First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1381 (9th Cir.1987); Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir.1985); Inglis & Sons Baking v. ITT Continental Baking Co., Inc., 526 F.2d 86, 88 (9th Cir. 1975). Although often discussed in the alternative, these tests represent the extremes on a single continuum. "The critical element is the relative hardship to the parties. If the balance of hardships tips decidedly toward the plaintiff, less likelihood of success on the merits is required." Wilson v. Watt, 703 F.2d 395, 399 (9th Cir.1983).

Analysis
The proponents have moved for an order approving the 1987 Ocean and In-River Management Agreement. The Northwest Gillnetters Association (hereinafter "Gillnetters") and Columbia River Fishermans Protective Union (hereinafter "Protective Union") appeared as amicus curiae and expressed concern over the provisions relating to the length of the fisheries.
Idaho objects and is asking the court to postpone adoption of the plan pending good faith negotiations by the parties on the conservation of type B wild steelhead. Idaho argues that the type B wild steelhead is the weaker stock and the proposed Plan will not allow escapement goals to be reached. Further, Idaho argues that adoption of the Plan forecloses opportunity for conservation of steelhead because there will be no incentive for the other parties to negotiate and steelhead will be relegated to a secondary role.
As a preliminary matter I must consider whether Idaho has demonstrated harm to a protectable interest and whether its protectable interest outweighs the advantages to the agreeing parties and the public interest. Here, Idaho's interest is the management of type B wild steelhead in Zone 6. This is balanced against an agreement reached by Washington, Oregon, the federal government and four of the Indian tribes as to the management of the upper Columbia River fall chinook and coho salmon stocks in ocean and in-river fisheries for the 1987 season and against the public's interest in this management, the fall harvest and obligations to abide by the Indians' treaty fishing rights.
On the one hand, Idaho holds a unique interest in the steelhead at issue because almost all of them return to its boundaries. Further, if proper conservation techniques are not implemented, the danger is extinction of wild steelhead. Idaho's interest is in optimum escapement of wild steelhead in Zone 6.
Idaho submitted an affidavit stating that on September 12, 1984 TAC established an interim minimum spawning escapement for wild/natural steelhead of 30,000 fish. Further, the affidavit claims that during negotiations of a permanent Columbia River Management Plan the past four years the technical staffs of Washington, Oregon and Idaho achieved consensus that rebuilding of the summer wild type B steelhead runs would not take place when the harvest rate exceeded 30 percent. Idaho points to harvest rates of greater than 30 percent in 1985 and 1986 and argues that possible harvest rates of type B wild steelhead for 1987 were estimated at 33 to 43 percent during negotiations for the proposed order. According to Idaho this justifies their conservation concerns.
However, the proponents point to the TAC interim minimum spawning escapement *1465 goal of 30,000 and estimates made by TAC of wild steelhead in the Snake River System since 1974. According to the estimates, these numbers demonstrate a steady increase in the numbers of wild steelhead from a 1974-75 level of 10,300 to a 1985-86 level of 26,900. The proponents claim that this year a record size run of fall chinook is anticipated. However, the season length is to remain the same length as last year. This constraint was made, they argue, to benefit the type B wild steelhead by assuring even higher escapement numbers.
Further, after years of adversarial posture and continuing litigation, the proponents have come to an accord on a one year management plan. They claim that conservation of steelhead was considered during negotiation of the plan. Here the interests are in protecting the Indians' treaty fishing rights, in conservation of all species, and in the harvest of fall chinook and coho salmon in the Columbia River ocean and in-river fisheries. However, the proponents ask for recognition of the fact that because the timing of the runs of steelhead and fall chinook is identical and the sizes of the fish are identical, optimal conservation of both steelhead and fall chinook is just not possible. Thus they claim that the proposed agreement before the court is a reasonable attempt to manage the fall chinook without an unreasonable effect on steelhead. Finally, the proponents note an urgency in approving the management plan before the fishing seasons commence.
I agree with the proponents. In considering the record, I find that while Idaho is concerned with the percentage of escapement of type B wild steelhead, the proponents have demonstrated that the numbers of steelhead escapement have greatly increased. This indicates that management during the past several years has not only considered steelhead escapement but has been successful. Further, I was impressed by the assertions in the record that the proposed season was not lengthened over last year out of consideration for steelhead escapement even though all estimates indicated a potentially much larger run justifying a longer season. I further find open and diligent negotiations between the proponents and Idaho and that the proponents adjusted the Plan with steelhead in mind. In addition, I find that the conservation goals of all the parties are being met. Therefore, I do not believe that Idaho would be successful in proving extinction or harm to the type B wild steelhead. Further, I do not find any hardship that would occur to the state of Idaho or the type B wild steelhead run under the Plan. The request to delay adoption of the Plan in order to try to reach agreement on this last issue would be self-defeating in that the run in controversy would have occurred before further agreement could be reached.
Aside from consideration of the arguments presented by Idaho, my ultimate responsibility is to reach a balance between the competing interests of the Indians' treaty fishing rights, optimal fish harvest and necessary conservation of all species of fish. I feel this is accomplished by the Plan. I commend the parties on their ability to reach unanimous accord on the bulk of the one year plan and have all but one agree in the provisions relating to Zone 6.
The Gillnetters and Protective Union argue that the Compact acts only ceremoniously, will adopt the Plan automatically and that the determinations made in the Plan should be set by the Compact. These arguments are not relevant to the motion before the court.

Conclusion
I find that Idaho has not demonstrated a likelihood of harm to a protectable interest that outweighs the probable advantages to all the parties and the public interest in approval of the management plan. I further find that the Plan does reach the required balance between the Indians' treaty fishing rights, optimal fish harvest and conservation of all species. I therefore adopt the 1987 Ocean and In-River Management Agreement for Upper Columbia River Fall Chinook and Coho Salmon.

ON MOTION TO RECONSIDER
MARSH, Judge.
The State of Idaho has moved the court pursuant to Fed.R.Civ.P. 52(b), 59(e) and 60(b) to reconsider its opinion of July 24, 1987 and to amend its findings of fact and conclusions of law. The Confederated Tribes of the Warm Springs Reservation, the Nez Perce Tribe of Idaho, the Yakima Indian Nation, the Confederated Tribes of the Umatilla Nation, the State of Washington and the United States oppose the motion. Further, the Confederated Tribes and Bands of the Yakima Nations and the Nez Perce Tribe of Idaho move to strike Idaho's *1466 motion for reconsideration and for assessment of costs and attorney's fees as sanctions pursuant to Fed.R.Civ.P. 11. For the reasons that follow, the motions are denied.
Fed.R.Civ.P. 52(b) allows the court, upon motion of a party to amend its findings or make additional findings. The motion must raise questions of substance by seeking reconsideration of material findings of fact or conclusions of law. Leishman v. Associated Wholesale Electric Co., 318 U.S. 203, 63 S.Ct. 543, 544, 87 L.Ed. 714 (1943) reh'g. denied, 318 U.S. 800, 63 S.Ct. 758, 87 L.Ed. 1163. Motions under Rule 52(b) are primarily designed to correct findings of fact which are central to the decision and are not intended to serve as a vehicle for a rehearing. See Davis v. Mathews, 450 F.Supp. 308, 318 (D.Cal.1978) (citations omitted).
Fed.R.Civ.P. 59(e) provides that a motion to alter or amend a judgment shall be served not later than ten days after entry of the judgment.
Fed.R.Civ.P. 60(b) provides for relief from judgment or order for reasons of inter alia, mistake, inadvertence, excusable neglect, newly discovered evidence and fraud. Motions for relief under Rule 60(b) are addressed to the sound discretion of the court. Thompson v. Housing Authority of City of Los Angeles, 782 F.2d 829, 832 (9th Cir.1986) cert. denied ___ U.S. ___, 107 S.Ct. 112, 93 L.Ed.2d 60. In order to obtain relief from a judgment, the moving party must demonstrate that extraordinary circumstances exist. United States v. Sparks, 685 F.2d 1128, 1130 (9th Cir.1982); See Ackerman v. United States, 340 U.S. 193, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950).
The major emphasis of the argument of the State of Idaho is that I erred in regard to my findings relating to wild steelhead as a species with respect to type B wild steelhead. The opposing parties argue that Idaho's motion is not timely and if it was timely, it does not address manifest error nor lack of substantial evidence to support the Court's findings.
I find that Idaho's motion was timely made. Further, I have read the memorandum of Idaho and the opposing parties. I find no ground in any of the rules relied upon by Idaho on which to grant their motion for reconsideration. Specifically, I find no evidence of mistake, inadvertence, surprise, or excusable neglect in the original motion, my original opinion or this motion for reconsideration. In addition, Idaho points to no newly discovered evidence, fraud, misrepresentation, other misconduct or other reason justifying relief. Based upon the evidence before me at the initial motion hearing, I believe my original findings of fact and conclusions of law are correct and should stand accordingly. Idaho's motion for reconsideration is denied.
Next, I must consider the motion for sanctions. Each case involving attorney sanctions must be taken individually and evaluated in light of its own peculiar circumstances. Matter of Yaqman, 796 F.2d 1165, 1182 (9th Cir.1986). In so doing the court must balance concern over frivolous litigation and abusive practices of some lawyers who unjustly burden other parties, frustrate those trying to vindicate their rights and obstruct the civil justice system against hard-fought, energetic and zealous advocacy and honest representation. Id. Here, Idaho did point to a specific area of findings of fact in which they felt I erred. Upon further reflection, I still disagree with them. But I find that this is not a situation in which sanctions need be imposed.
Idaho's motion for reconsideration is denied. The Confederated Tribes and Bands of the Yakima Nation and Nez Perce Tribes' motion to strike and for sanctions is denied.